| | |
|---|---|
| UNITED STATES OF AMERICA and<br>PEOPLE OF THE VIRGIN ISLANDS | )<br>)<br>) |
| v. | )  Criminal Action No. 2016-0025<br>) |
| KAREEM MATTHIAS, | )<br>) |
| Defendant. | )<br>) |
| _____ | ) |

**Attorneys:**
**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
 *For the Government*

**Omodare Jupiter, Esq.,**
St. Croix, U.S.V.I.
**Brendan A. Hurson, Esq.,**
St. Thomas, U.S.V.I.
 *For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

 THIS MATTER comes before the Court on Defendant's "Notice of Appeal of Detention Order"; Defendant's "Motion for Review and Revocation of Detention Order and Brief in Support"; and the Government's "Response to Motion for Review of Detention Order." (Dkt. Nos. 16, 17, 22). For the reasons discussed below, the Court will deny Defendant's Appeal and Motion.

## I. BACKGROUND[1]

 Defendant is charged by Information with the following seven counts: (1) Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1); (2) Using a Firearm During a Violent

---

[1] The Court bases the background factual discussion on the record established at the detention hearing, before the Magistrate Judge and on the filings before the Court. The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendant is

Crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii); (3) three counts of Attempted Murder First Degree in violation of 14 V.I.C. §§ 922(a)(1) and 331(1) (Counts 3-5); (4) Reckless Endangerment First Degree in violation of 14 V.I.C. § 625(a); and (5) Unauthorized Possession of a Firearm in violation of 14 V.I.C. § 2253(a). (Dkt. No. 21).[2]

    After the Government moved orally to detain Defendant pending trial, a detention hearing was held on October 7, 2016. (Dkt. No. 19-1 at 3). At the hearing, the Government advised the Magistrate Judge that in support of its position for detention, the Government "would rely on the affidavit that was submitted as part of the complaint in this case, the charging document, the information in the pretrial services report as well as what has transpired during the initial advice of rights proceeding in this matter." (*Id.*).[3]

    The affidavit of Task Force Officer Emanuel Turner, Jr. (the "Affidavit") states that on April 12, 2016, at approximately 7:30 p.m., Detective Kai Joseph received a report regarding the discharge of shots. (Dkt. No. 1-1 at 1). Upon arrival at the scene, Detective Joseph observed a blue Chevy Blazer with what appeared to be several bullet holes in it. (*Id.*). After several minutes at the scene, an individual later identified as Devon Benjamin-Edwards walked up to the vehicle and identified himself as the driver. (*Id.*). Mr. Benjamin-Edwards informed Detective Joseph that he,

---

presumed innocent until proven guilty. The facts discussed herein are alleged; they are not conceded or proven beyond a reasonable doubt to the factfinder.

[2] Defendant was initially charged by Criminal Complaint with the same seven counts that are now contained in the Information. (*See* Dkt. No. 1). The Information was filed on April 21, 2016, after Defendant's detention hearing. (*See* Dkt. No. 10).

[3] The Government clarified that the only relevance of the advice of rights proceeding is that Defendant allegedly responded when the Court addressed him as Kareem Matthias. Defendant, who did not have counsel present during the advice of rights hearing, objected to the Court using any evidence derived from the advice of rights proceeding. Because the Court finds that the affidavit itself contains probable cause for Defendant's pretrial detention, the Court does not reach the issue of what evidence, if any, can permissibly be derived from the advice of rights hearing.

Jeremiah George, Vanessa Adams, and two children were in the vehicle when shots were fired at it. (*Id.* at 1-2).

Mr. Benjamin-Edwards was taken to the police station where he gave a video recorded statement. (*Id.* at 2). Mr. Benjamin-Edwards stated that while he and the other passengers were traveling north in his vehicle, a white Acura sedan cut him off. (*Id.*). The white sedan came to a stop and a black male who Mr. Benjamin-Edwards knows by the name of "Stinky" leaned out of the front passenger-side window and fired shots from a black handgun at Mr. Benjamin-Edwards' vehicle. (*Id.*). After hearing the shots, Mr. Benjamin-Edwards got out of his vehicle and ran north where he sought refuge at a nearby house. (*Id.*). Mr. Benjamin-Edwards stated that he knew "Stinky" from the Frederiksted area and had purchased marijuana from him in the past. (*Id.*).

Detective Joseph later made contact with Vanessa Adams, who was in the back seat of Mr. Benjamin-Edwards' vehicle along with two children. (*Id.*). She stated that she also observed a white Acura cut in front of Mr. Benjamin-Edwards' vehicle and heard shots being fired. (*Id.*). When she heard the shots, Ms. Adams grabbed the two children, exited the vehicle, and ran east near a baseball field where she called her boyfriend to pick her up. (*Id.*). Ms. Adams further stated that she was unable to clearly see the shooter from her position. (*Id.* at 2-3).

Detective Joseph was eventually able to contact the other adult passenger of Mr. Benjamin-Edwards' vehicle, Jeremiah George. (*Id.* at 3). In a video statement, Mr. George stated that he was the front passenger of Mr. Benjamin-Edwards' vehicle and that he put his head down as soon as he heard the gun shots being fired. (*Id.*). After he heard the shots, he exited Mr. Benjamin-Edwards' vehicle and helped Ms. Adams with one of the children. (*Id.*).

While there were no other witnesses, Detective D. Samuel stated that from prior cases it was known that Defendant Kareem Matthias is also known as "Stinky." (*Id.*). Based on this

information, Detective Joseph had another officer generate a photo array of six individuals—one of whom was Defendant. (*Id.*). Mr. Benjamin-Edwards was shown the photo array and asked whether the individuals that shot at him was in the photo array. (*Id.*). Mr. Benjamin-Edwards identified the male individual in photograph 3 as "Stinky," initialed the picture, and signed a form indicating the same. (*Id.*). The individual in photograph 3 is Defendant. (*Id.*).

A check with the Firearms Unit revealed that Defendant does not have a license to possess a firearm in the Virgin Islands. (*Id.* at 4). Additionally, a check of Defendant's credit history revealed that Defendant was convicted in the Superior Court of the Virgin Islands on November 23, 2010 of Grand Larceny, which is a felony. (*Id.* at 3). Defendant was sentenced to two years and one month of supervised probation with conditions. (*Id.*).

At the detention hearing, Defendant objected to the Government relying on the Affidavit and not producing some witness, which would allow for cross-examination. (Dkt. No. 19-1 at 3-4). For his part, Defendant indicated that he had no witnesses regarding whether there was probable cause to support the charges against him. (*Id.* at 4). After hearing arguments from both sides, the Magistrate Judge overruled Defendant's objection and found that, based on the Affidavit, there exists probable cause to support the charges in the Complaint—specifically, felony possession of a firearm, using a firearm during a crime of violence, attempted murder in the first degree, unauthorized possession of a firearm, and reckless endangerment with a firearm. (*Id.* at 10).

At the detention hearing, Defendant called Hermita Florent as a witness. (*Id.*). Ms. Florent testified that Defendant is her son and that, except for a four-month stay with his father off island, he has lived on St. Croix all of his life. Ms. Florent has another son, Ceyon Florent, who is 30 years old and lives with her. (*Id.* at 13-14). According to Ms. Florent, both she and her son Ceyon are willing to be third-party custodians for Defendant and allow him to live with them. (*Id.* at 16).

Ms. Florent further testified that when she learned that the police were looking for Defendant, she got in touch with him. At her advice, Defendant turned himself into the police. (*Id.* at 15). Along with Ms. Florent, present in the courtroom during the detention hearing were Ceyon Florent; Ms. Florent's sister, Eupemia; her niece, Heidi Meyers; and her friend, Thelma Jameson. (*Id.* at 13). Ms. Florent also stated that she has one brother and two aunts, although Ms. Florent did not indicate where her brother and two aunts lived. (*Id.* at 17). Defendant proffered to the Magistrate Judge that Ceyon Florent would offer testimony consistent with that of Ms. Florent. (*Id.*).

In his "Order of Detention Pending Trial" issued on October 7, 2016, (the "Detention Order") the Magistrate Judge found that "[t]here is a rebuttable presumption [under 18 U.S.C. § 3142(e)(3)] that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed . . . an offense under [§ 924(c)]." (Dkt. No. 10 at 2). The Detention Order states that "[D]efendant has not introduced sufficient evidence to rebut the presumption." (*Id.*). The Magistrate Judge concluded that Defendant must be detained pending trial because the Government has proven by "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." (*Id.*).

In the instant Motion, Defendant requests that the Court revoke the Magistrate Judge's Detention Order. (Dkt. No. 17 at 1). In support of his position, Defendant raises the following three arguments: (1) the Magistrate Judge erred as a matter of law in finding that Count 2 of the Information (Using a Firearm During a Violent Crime in violation of 18 U.S.C. § 924(c) is supported by probable cause; (2) the Magistrate Judge erred as a matter of law in applying the rebuttable presumption under 18 U.S.C. § 3142 that no condition or combination of conditions will

reasonably assure the safety of the community; and (3) regardless of whether the rebuttable presumption applies, the Government failed to meet its burden of proving by clear and convincing evidence that no set of conditions would reasonably assure the safety of the community. (*Id.* at 5). The majority of Defendant's Motion is focused on his contention that the rebuttable presumption under 18 U.S.C. § 3142 does not apply. Defendant argues that because the attempted murder and reckless endangerment counts with which Defendant is charged do not meet the definition of crime of violence under the categorical approach, there is no violation of § 924(c) and thus no rebuttable presumption. (*See id.* at 9-20).

In its Response, the Government asserts that the Information filed in this matter against Defendant, because it is the equivalent of an indictment, is sufficient to establish probable cause that Defendant committed the charged offenses. (Dkt. No. 22 at 5). The Government further asserts that attempted murder, even under the categorical approach, qualifies as a crime of violence and thus can serve as a predicate offense for the 18 U.S.C. § 924(c) charge. (*Id.* at 8-9). Because there is probable cause that Defendant violated 18 U.S.C. § 924(c), the rebuttable presumption under 18 U.S.C. § 3142 applies. (*See id.*). The Government also argues that, given that the rebuttable presumption applies, Defendant failed to put forth sufficient evidence to rebut the presumption. (*Id.* at 6). The Government asserts that Ms. Florent's testimony regarding her and Ceyon Florent's willingness to serve as a third-party custodian, Defendant's prompt surrender, and his family and community ties are insufficient to rebut the presumption that no condition or combination of conditions exist that will reasonably assure the safety of the community. (*Id.*).

## II.    PRETRIAL DETENTION STANDARD

Under the Bail Reform Act, 18 U.S.C. §§ 3141-3156, pretrial detention of a criminal defendant will be ordered only if, after a hearing upon motion by the Government, "a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance

of the person as required and the safety of any other person and the community." 18 U.S.C.

§ 3142(e)(1). In making its determination of whether any conditions of release can reasonably

assure a defendant's appearance and the safety of others, the Court must consider the factors set

forth in 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

"To justify pretrial detention, the [G]overnment must establish risk of flight by a

preponderance of the evidence, and dangerousness by clear and convincing evidence." *United

States v. Kanawati*, 2008 WL 1969964, at *2 (D.V.I. May 5, 2008) (citing, *e.g.*, *United States v.

Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986) and *United States v. Traitz*, 807 F.2d 322, 324 (3d

Cir. 1986)).[4] However, under 18 U.S.C. § 3142(e), "subject to rebuttal by the person, it shall be

---

[4] Several cases in this District have noted that the "[r]isk of flight and danger to the community are 'distinct statutory sources of authority to detain,' and proof of one ground for detaining a

presumed" that no condition or combination of conditions exists that can reasonably assure a defendant's appearance and the safety of others where there is "probable cause to believe that the person committed [*inter alia*] . . . an offense under [18 U.S.C. §] 924(c)." 18 U.S.C. § 3142(e)(3)(B). Once the presumption under 18 U.S.C. § 3142(e) arises, "the burden shifts to [the defendant] to produce some credible evidence that he will appear and will not present a threat to the community." *United States v. Oliver*, 2016 U.S. Dist. LEXIS 58745, at *16 (W.D. Pa. May 3, 2016) (citing *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986)); *see also United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986) ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness."). If a defendant presents sufficient evidence to rebut the presumption under 18 U.S.C. § 3142(e), then "the burden of persuasion remains on the government." *United States v. Cirillo*, 1999 U.S. App. LEXIS 28049, at *5 n.1 (3d Cir. July 13, 1999).

In *United States v. Delker*, 757 F.2d 1390 (3d Cir. 1985), the Third Circuit determined that 18 U.S.C. § 3145(b) contemplates a *de novo* review by the district court of the issues raised in an objection to a magistrate judge's detention order. *Id.* at 1394; *see also United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) ("When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release."). Nevertheless, the reasons

---

defendant 'is quite enough,' making any discussion of the other ground 'irrelevant.'" *Kanawati*, 2008 WL 1969964, at *2 (quoting *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985)); *accord United States v. Richardson*, 2009 WL 2044616, at *3 (D.V.I. July 9, 2009); *United States v. Peterson*, 2009 WL 1514402, at *3 (D.V.I. May 29, 2009); *United States v. Tyson*, 2008 WL 4415298, at *2 (D.V.I. Sept. 23, 2008); *United States v. Alexander*, 2007 WL 3391417, at *2 (D.V.I. Oct. 26, 2007); *see also United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988); *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985); *United States v. Cole*, 715 F. Supp. 677, 679-80 (E.D. Pa. 1988); *United States v. Kouyoumdjian*, 601 F. Supp. 1506, 1508-10 (C.D. Cal. 1985).

articulated by the magistrate judge for or against detention must be given "respectful consideration." *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986) (quoting *Delker*, 757 F.2d at 1400) (quotations omitted). The district court may make its independent determination based solely on the evidence introduced at the hearing before the magistrate judge. *Delker*, 757 F.2d at 1395. Alternatively, the reviewing court has the discretion to conduct an evidentiary hearing to aid in its *de novo* review. *Kanawati*, 2008 WL 1969964, at *2 (citing cases).

## III.   ANALYSIS

The Court will first examine Defendant's two threshold arguments that (1) the Government cannot rely on the Affidavit to establish probable cause, and (2) that there is no violation of 18 U.S.C. § 924(c) (and thus no rebuttable presumption of dangerousness) because the charged offenses of attempted murder and reckless endangerment do not constitute crimes of violence. Rejecting these arguments, the Court will then move to the merits of this matter.

### A.  The Government's Reliance on the Affidavit

Defendant objects to the Government establishing probable cause exclusively from the affidavit of Task Force Officer Emanuel Turner, Jr. At the detention hearing, Defendant asserted that pursuant to Federal Rule of Criminal Procedure 5.1, "when [the Government is] relying on evidence of this nature regarding particularly an identification. . . . [it must] put some witness on who has some type, some knowledge that we can cross examine so the Court can make a credibility and reliability finding." (Dkt. No. 19-1 at 4). In this regard, Defendant also asserted that "there is testimonial evidence that is being produced" and that "[he] has a right of confrontation." (*Id.*). Under the circumstances here, the Court disagrees that proceeding solely by affidavit rendered the Government's case for detention insufficient.

The requirements of a detention hearing are set forth in 18 U.S.C. § 3142(f), which states in pertinent part:

At the hearing, the person has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed. The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding pursuant to [§ 3142](e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.

18 U.S.C. § 3142(f). Although § 3142(f) entitles Defendant to "cross-examine witnesses who appear at the hearing," there is no requirement in the statute that the Government must present live testimony. § 3142(f). Similarly, Federal Rule of Criminal Procedure 5.1(e), upon which Defendant relied at the detention hearing, states:

At the preliminary hearing, the defendant may cross-examine adverse witnesses and may introduce evidence but may not object to evidence on the ground that it was unlawfully acquired. If the magistrate judge finds probable cause to believe an offense has been committed and the defendant committed it, the magistrate judge must promptly require the defendant to appear for further proceedings.

Fed. R. Crim. P. 5.1(e). As with § 3142(f), while Rule 5.1(e) makes clear that a defendant generally has the right to cross examine adverse witnesses, there is no requirement in the Rule that the Government must proceed by live testimony. In sum, nothing in the text of § 3142(f) or Rule 5.1(e) directly supports Defendant's legal argument that reliance on the Affidavit to establish probable cause was necessarily insufficient.

Case law interpreting the requirements of detention hearings under 18 U.S.C. § 3142 also runs counter to Defendant's position. "It is well settled that at a detention hearing the government may proceed by proffer, that hearsay testimony may be used, and that the Court has discretion whether to require direct witness testimony." *United States v. Muse*, 2014 WL 495121, at *1 (D.N.J. Feb. 6, 2014) (citing *Delker*, 757 F.2d at 1395); *see also*; *United States v. Wrensford*, 2012 WL 6028628, at *4 (D.V.I. Dec. 4, 2012) (affirming a detention order and stating that "[t]he weight

of evidence factor may be satisfied by reliance on an affidavit"); *United States v. Flanders*, 2010 WL 4054442, at *6 (D.V.I. Oct. 15, 2010) (affirming the detention order and noting that "it was proper to proceed on the Government's detention motion by proffer"); *United States v. Schenberger*, 498 F. Supp. 2d 738, 739 n.2 (D.N.J. 2007) (ordering the defendant detained pending trial and noting that "[a]s was its right[,] the government proceeded by proffer at the detention hearing").

In this regard, the Court finds the case of *United States v. Accetturo*, 783 F.2d 382 (3d Cir. 1986) to be particularly instructive. In *Accetturo*, the Government presented evidence at the detention hearing through the testimony of an FBI agent, who recounted the sworn testimony of a key government witness. *Id.* at 384-85. The defendants challenged the reliability of the key government witness by proffering evidence that he was a drug addict with a history of psychiatric disorders and requested that he be produced at the detention hearing for cross-examination. *Id.* at 388. The district court refused to compel the key government witness to testify, and this decision was upheld by the Third Circuit on appeal. *Id.* While acknowledging that reliance on hearsay evidence is not always appropriate, the Third Circuit noted that "[t]here was no reason to believe [that the government witness] would give evidence favorable to appellants or would retract information harmful to them." *Id.* The Third Circuit went on to note the following:

> [T]he magistrate or judge possesses adequate power to reconcile the competing demands of speed and of reliability, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question. Through sensible exercise of this power of selection, the judicial officer can make meaningful the defendant's right to cross-examine without unnecessarily transforming the bail hearing into a full-fledged trial or defendant's discovery expedition.

*Id.* at 389 (quoting *United States v. Acevedo-Ramos*, 755 F.2d 203, 207–08 (1st Cir. 1985)) (quotations omitted); *cf. Muse*, 2014 WL 495121, at *1 ("the Court has discretion to decline to accept proffered evidence and to require the government to produce a witness to testify").

As in *Accetturo*, the Court finds that the Magistrate Judge committed no error in allowing the Government to rely on the Affidavit rather than calling a live witness because there is "no reason to believe [that the Government's witnesses] would give evidence favorable to [Defendant] or would retract information harmful to [him]." 783 F.2d at 388. Even less than the defendants in *Accetturo* who actually proffered evidence challenging the reliability of the Government's witness, Defendant here simply rests on his assertion that the Government must "put some witness on who has some type, some knowledge that we can cross examine so the Court can make a credibility and reliability finding." (Dkt. No. 19-1 at 4). Similarly, in his Motion, Defendant states that the Government presented no evidence regarding the reliability of the identification, the procedures used in the identification, or the lack of suggestivity in the identification procedure. (Dkt. No. 17 at 3). While possibly fodder in the context of a motion to suppress evidence, these bare assertions are insufficient to require the Government to go beyond the production of an affidavit here.[5] Thus, under these circumstances, the Government's reliance on the Affidavit does not render its case for detention insufficient. *See Accetturo* 783 F.2d at 388; *cf. Muse*, 2014 WL 495121, at *2 (holding that the Government must present live witness during the detention hearing where the defendant directly disavowed inculpatory statements that the Government's affidavit attributed to the defendant).

---

[5] The Court notes that Rule 5.1(e) of the Federal Rules of Criminal Procedure, upon which Defendant relies, provides that the defendant "may not object to evidence on the grounds that it was unlawfully acquired."

Defendant's assertion at the detention hearing that he has a right of confrontation regarding the Government's evidence is also unavailing. The Third Circuit rejected a similar argument in *Delker* where the defendant argued that the government improperly admitted evidence during his detention hearing. 757 F.2d at 1396. At the detention hearing in *Delker*, the government relied primarily on the live testimony of two government agents who recounted out-of-court statements from several witnesses. *Id.* The defendant argued that he had "a due process right to confront those witnesses whose testimony is adverse and material concerning the crimes charged in an indictment" and that "the district court erred in denying his request to subpoena material government witnesses." *Id.* at 1396-97. The Third Circuit held that "the district court did not err in admitting hearsay at the hearing and in refusing to subpoena the witnesses whose out-of-court statements linked appellant to the conspiracy." *Id.* at 1397-98. In so holding, the Third Circuit reasoned that that the detention hearing should be governed by *Gerstein* standards in which the full panoply of adversary safeguards is not essential. *Id.* (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975)).[6]

Here, as in *Delker*, the Magistrate Judge did not err in admitting and considering the out-of-court statements contained in the Affidavit. Even less than the defendant in *Delker*, at no point during the detention hearing did Defendant indicate that he wanted to subpoena any particular Government witness to testify, let alone make any proffer that the testimony of that witness would be of such a nature as to warrant live testimony from the witness. Accordingly, under the

---

[6] The Third Circuit in *Delker* noted that its holding did not address "whether a defendant may have a right to confront non-appearing government witnesses when the defendant can make a specific proffer to the court of how the witness' testimony will negate the government's contention that the defendant is a danger to the community, or will rebut a presumption created by the statute that the defendant should be detained." 757 F.2d at 1398 n.4. As noted above, Defendant here has made no proffer as to the testimony of any Government witness.

circumstances here, Defendant had no right of confrontation that was infringed by the Government's reliance on the Affidavit.

In sum, the Court rejects Defendant's argument that the Magistrate Judge erred under the circumstances here in allowing the detention hearing to proceed by sworn affidavit instead of with the testimony of a live Government witness.[7]

## B. Crime of Violence

As noted above, a rebuttable presumption of detention arises under 18 U.S.C. § 3142(e) if, *inter alia*, there is probable cause to believe that a person committed an offense under 18 U.S.C. § 924(c). The Magistrate Judge's Detention Order found that this rebuttable presumption applies.

---

[7] Defendant also cites *United States v. Suppa*, 799 F.2d 115 (3d Cir. 1986) for his assertion that "[t]his Circuit has expressed doubt that probable cause may be based upon proffered or hearsay evidence." (Dkt. No. 17 at 2 n.1). At the detention hearing in *Suppa*, the government sought to invoke the rebuttable presumption of danger by relying on an indictment as well by proffering the existence of inculpatory eyewitness testimony and other corroborating evidence. 799 F.2d at 116. The government did not call any live witnesses at the hearing. *Id.* The Third Circuit upheld the district court's detention order, noting that "the indictment is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness." *Id.* at 118. While the Third Circuit noted that it has "grave question whether the required finding of probable cause may be based on a proffer of evidence by the government," it found that it was unnecessary to rule on the proffer issue because of the existence of the indictment. *Id.*

This Court's ruling is not inconsistent with *Suppa*. First, contrary to Defendant's assertion, the Third Circuit in *Suppa* does not call into question the use of hearsay evidence in a detention hearing. Indeed, in the same year as *Suppa*, the Third Circuit in *Accetturo* confirmed that hearsay statements can be used in detention hearings in appropriate circumstances. 783 F.2d at 390 ("We acknowledge the difficulty faced by defendants seeking to discredit government evidence when, as here, the government chooses to prosecute its case primarily through the use of hearsay. However, Congress has determined that the need for speed in reaching pretrial detention determinations justifies the use of procedures less demanding than those applicable to a 'full-blown trial,' *United States v. Delker*, 757 F.2d 1390, 1398 (3d Cir. 1985)."). Also, unlike the effect of a bare proffer of evidence by the government—which was the issue in *Suppa* on which the Third Circuit did not rule—here, the Government introduced a sworn affidavit from Sergeant Turner. Finally, as discussed further below, like the indictment in *Suppa*, the Information filed in this matter is sufficient to trigger the rebuttable presumption of dangerousness. *See Flanders*, 2010 WL 4054442, at *6 (noting that the filing of an information in the Virgin Islands is full equivalent to an indictment and holding that "in the Virgin Islands, an information similarly supports a finding of probable cause").

In this regard, Count 2 in the Information charges Defendant with a violation of § 924(c)(1)(A)(iii), alleging that Defendant "during and in relation to a crime of violence, that is, attempted murder and reckless endangerment . . . did use, carry and discharge a firearm, that is, a handgun." (Dkt. No. 21 at 2). Defendant argues that neither attempted murder nor reckless endangerment meets the statutory definition of a crime of violence and, therefore, Defendant could not have violated § 924(c). The Court disagrees and finds that the attempted murder first degree offense with which Defendant is charged in Counts 3-5 constitutes a crime of violence under § 924(c).[8]

Under § 924(c)(3), the term "crime of violence" means an offense that is a felony and:

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 924(c)(3). However, after the Supreme Court in *United States v. Johnson*, 135 S. Ct. 2551 (2015) (*Johnson II*) held that the residual clause of the Armed Career Criminal Act is void for vagueness, the constitutionality of § 924(c)(3)(B) is doubtful. *See Baptiste v. Attorney General*, 841 F.3d 601, 620-21 (3d Cir. 2016) (holding that, pursuant to *Johnson II*, 18 U.S.C. § 16(b) (which is substantially identical to § 924(c)(3)(B)) is void for vagueness).[9] The Court need not consider the continued validity of § 924(c)(3)(B), however, because it finds that the attempted murder first degree charge that Defendant faces constitutes a crime of violence under the "elements clause" of § 924(c)(3)(A).

---

[8] Because the Court finds that attempted murder constitutes a crime of violence, the Court declines to reach the issue of whether reckless endangerment also constitutes a crime of violence.

[9] The residual clause of the Armed Career Criminal Act provides that a "violent felony" is a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

Courts employ the categorical approach to determine whether a particular crime constitutes a crime of violence. *See Baptiste*, 841 F.3d at 606-07 (applying the categorical approach to determine whether a prior crime falls within the definition of crime of violence found in 18 U.S.C. § 16). Under this approach, courts do not consider the facts underlying a defendant's alleged conduct but rather compare the federal definition of a crime of violence to the statute underlying the predicate offense to determine whether the predicate offense is categorically a crime of violence. *Id.* at 606. If the statute underlying the predicate offense "sweeps more broadly" than the definition of a crime of violence, then the predicate offense does not constitute a crime of violence, even if the individual's actual conduct giving rise to the predicate offense would satisfy the crime of violence definition. *See United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014) (discussing the categorical approach in the context of whether a particular crime constitutes a "crime of violence" for purposes of the career offender sentencing enhancement) (citing *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013)).

Where the statute underlying the particular crime is "divisible," in that it "comprises multiple, alternative versions of the crime," courts may look to a limited class of documents such as the charging paper "to determine which version of the offense was the basis of conviction." *Id.* (quoting *Descamps*, 133 S. Ct. at 2284) (quotations omitted). This is known as the modified categorical approach. The modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *United States v. Henderson*, 841 F.3d 623, 627 (3d Cir. 2016) (quoting *Descamps*, 133 S. Ct. at 2285) (quotations omitted).

The Court finds that the Virgin Islands statute for attempted first degree murder (14 V.I.C. § 922(a)) is divisible. In relevant part 14 V.I.C. § 922 states as follows:

(a) All murder which

> (1) is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other kind of willful, deliberate and premeditated killing;

> (2) is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem, assault in the first degree, assault in the second degree, assault in the third degree and larceny; or

> (3) is committed against (A) an official, law enforcement officer, or other officer or employee of the Government of the Virgin Islands while working with law enforcement officials in furtherance of a criminal investigation (i) while the victim is engaged in the performance of official duties; (ii) because of the performance of the victim's official duties; or (iii) because of the victim's status as a public servant; or (B) any person assisting a criminal investigation, while that assistance is being rendered and because it is first degree murder;

is murder in the first degree.

14 V.I.C. § 922(a). The statutory text plainly lists 14 V.I.C. § 922(a)(1), (2), and (3) in the disjunctive. In doing so, the statute creates multiple, alternative versions of first degree murder. For example, murder committed against a law enforcement officer engaged in the performance of official duties would be first degree murder under 14 V.I.C. § 922(a)(3), even if the murder was committed in such a way that it did not fall within 14 V.I.C. § 922(a)(2). Because 14 V.I.C. § 922(a) "lists multiple, alternative elements, and so effectively creates 'several different crimes,'" the Court concludes that it is divisible. *Descamps*, 133 S. Ct. at 2285 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009) (ellipses omitted)).

Since 14 V.I.C. § 922(a) is divisible into multiple different versions, the Court must "determine which version of the offense" is applicable. *Brown*, 765 F.3d at 189. In each of the Counts for attempted first degree murder, the Information charges Defendant with an attempt to kill "with malice aforethought, deliberation and premeditation" and cites 14 V.I.C. § 922(a)(1).

Accordingly, the Court concludes that 14 V.I.C. § 922(a)(1) is the applicable offense and will analyze whether that particular subsection constitutes a crime of violence.

In view of the foregoing, the Court's inquiry is whether 14 V.I.C. § 922(a)(1) has as an element "the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). If it does, then it is categorically a crime of violence under § 924(c)(3)(A). In this regard, courts have interpreted the term "physical force" in similar contexts to mean "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting the definition of "violent felony" at 18 U.S.C. § 924(e)(2)(B)) (emphasis in original) (*Johnson I*). Conversely, if 14 V.I.C. § 922(a)(1) does not have as an element "the use, attempted use, or threatened use of physical force against the person or property of another," then first degree murder sweeps more broadly than the definition of crime of violence in 18 U.S.C. § 924(c), and the Virgin Islands offense of first degree murder would not be a crime of violence under the categorical approach.

Defendant argues that 14 V.I.C. § 922(a)(1) sweeps more broadly than the definition in § 924(c)(3)(A) and, therefore, first degree murder is not categorically a crime of violence. Defendant hinges his argument on the fact that first degree murder under 14 V.I.C. § 922(a)(1) can be committee by poisoning. (Dkt. No. 17 at 10). Murder by poisoning, Defendant reasons, "involves no use, attempted use, or threatened use of 'violent physical force.'" (*Id.*). In support of his position, Defendant cites cases from the Second, Fourth, Fifth (non-precedential), and Tenth Circuits for the proposition that just because an offense *results* in physical injury does not mean that the offense requires the offender to use, attempt to use, or threaten to use violent physical

force. (*Id.* at 10-12).[10] To the extent these cases are applicable, the Court finds them unpersuasive and rejects Defendant's argument.

The Court finds that attempted first degree murder qualifies as a crime of violence under the elements clause of § 924(c)(3)(A). At the outset, the Court notes that this conclusion is supported by a common-sense understanding of the meaning of a "crime of violence." In *Johnson I*, the Supreme Court analyzed the elements clause of the definition of "violent felony" in the armed Career Criminal Act. 559 U.S. at 140. Similar to the definition of "crime of violence" at issue here, the elements prong of the "violent felony" definition is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B). In interpreting the term "physical force," the Supreme Court considered "the context of [the] statutory definition," *i.e.*, a "violent felony." *Johnson I*, 559 U.S. at 140. The Supreme Court observed that "[w]hen the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer" and cited Black's Law Dictionary as defining "'violent felony' as '[a] crime characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon.'" *Id.* at 140-41.

The Court finds it significant that murder was one of the examples in the definition the Supreme Court used in *Johnson I* to describe the connotation conveyed by "violent felony." Just as it did with the term "violent felony," the Court finds that first degree murder exemplifies the connotation conveyed by the term "crime of violence." Finding that attempted first degree murder is not a crime of violence would—in this Court's view—strain common sense.

---

[10] In relevant part, Defendant references the following cases: *United States v. Torres-Miguel*, 701 F.3d 165, 168-69 (4th Cir. 2012); *United States v. De La Rosa-Hernandez*, 264 F. App'x 446 (5th Cir. 2008); *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005); *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003).

In addition to this common-sense understanding of the crime of attempted first degree murder, the Court finds that the Virgin Islands offense of attempted first degree murder at 14 V.I.C. § 922(a)(1) contains as an element the attempted use of violent physical force. That the elements of 14 V.I.C. § 922(a)(1) can be satisfied by methods such as poison does not dictate a different conclusion. As the Supreme Court has noted in a similar context, the use of force may be direct or indirect. Specifically, in *United States v. Castleman*, 134 S. Ct. 1405 (2014), the Supreme Court addressed the meaning of "physical force" in 18 U.SC. § 921(a)(33)(A)'s definition of "misdemeanor crime of domestic violence," (*i.e.*, an offense that "has, as an element, the use or attempted use of physical force"). 18 U.S.C. § 921(a)(33)(A). In this statutory provision, the Supreme Court held that the term "physical force" should be given its common law meaning (*i.e.*, offensive touching) as opposed to the meaning ascribed to it in *Johnson I* (*i.e.*, violent force). *Castleman*, 134 S. Ct. at 1410-11. The *Castleman* Court ultimately held that the defendant's conviction for domestic assault—which required intentionally or knowingly causing bodily injury—required the use of physical force and thus constituted a "misdemeanor crime of domestic violence." *Id.* at 1413-14 (noting that the defendant "pleaded guilty to having 'intentionally or knowingly cause[d] bodily injury' to the mother of his child, and the knowing or intentional causation of bodily injury necessarily involves the use of physical force") (internal citation omitted). In so holding, the Supreme Court rejected the lower court's contrary reasoning that one can intentionally cause bodily injury without the use of physical force—such as, for example, by poison. *Id.* at 1414. The Supreme Court reasoned:

> The "use of force" in [this] example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [this] logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

*Id.* at 1415.

While the Supreme Court in *Castleman* was not interpreting physical force to require "violent force," the concurrence by Justice Scalia is noteworthy. Justice Scalia argued that the term "physical force" in the defendant's statute of conviction should in fact be read to mean "violent force," as the Supreme Court defined that term in *Johnson I. Id.* at 1417 (Scalia, J., concurring).[11] Even under this higher requirement, Justice Scalia reasoned that the assault statute at issue in *Castleman* would still require "violent force" "[b]ecause intentionally or knowingly causing bodily injury categorically involves the use of force capable of causing physical pain or injury to another person," (*i.e.* violent force). *Id.* at 1417 (internal brackets, quotations, and citation omitted). As Justice Scalia noted, "it is impossible to cause bodily injury without using force 'capable of' producing that result." *Id.* at 1416-17.

After the Supreme Court's ruling in *Johnson II* struck down the residual clause of the Armed Career Criminal Act, several courts have cited the Supreme Court's analysis in *Castleman* in concluding that murder—even though it could be committed by the use of indirect force—nevertheless requires violent force and thus constitutes a crime of violence. *See, e.g.*, *United States v. Roof*, --- F. Supp. ---, 2016 WL 8118564, at *14 (D.S.C. Dec. 5, 2016) (distinguishing the binding authority of *Torres-Miguel* and holding that a violation of the Hate Crimes Act, which requires willful causation of bodily injury because of actual or perceived race, color, religion, or national origin resulting in death, is a crime of violence under § 924(c) and noting that "[t]ogether, *Castleman* and [*Johnson I*] hold that the knowing or intentional causation of bodily injury necessarily involves the use of violent physical force" and that "[a]ny felony having as an element

---

[11] The Court notes that Justice Scalia delivered the Opinion of the Supreme Court in *Johnson I*, 559 U.S. at 133.

the intentional infliction of bodily injury on another person is a crime of violence under § 924(c)");

*United States v. Studhorse*, 2016 WL 4134568, at *3-4 (E.D. Wash. Aug. 2, 2016) (finding that first degree murder is a crime of violence under 18 U.S.C. § 16(a) and noting that "such an act— that is, causing another's death—categorically involves the use of 'force capable of causing physical pain or injury' to the person or property of another"); *United States v. Moreno-Aguilar*, 198 F. Supp. 3d 548, 554 (D. Md. 2016) (distinguishing the binding authority of *Torres-Miguel* and holding that the Maryland offense of murder—even though it can be committed by poison— constitutes a crime of violence under § 924(c) and noting that finding otherwise "strains common sense and, more importantly, could lead to . . . absurd result[s]"); *see also United States v. Checora*, 155 F. Supp. 3d 1192, 1197 (D. Utah 2015) (observing that "[i]t is hard to imagine conduct that can cause another to die that does not involve physical force against the body of the person killed").[12]

---

[12] The Court acknowledges that there are some Circuits that have rejected the application of the Supreme Court's analysis in *Castleman* outside of the misdemeanor crime of domestic violence context. *See United States v. Rico-Mejia*, 2017 WL 568331 (5th Cir. Feb. 10, 2017); *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016); *Whyte v. Lynch*, 807 F.3d 463 (1st Cir. 2015). However, other Circuits have reached the opposite conclusion and have *not* restricted the reasoning in *Castleman* to the misdemeanor crime of domestic violence context. *See United States v. Redrick*, 841 F.3d 478, 484 (D.C. Cir. 2016) (holding that Maryland's armed robbery is a violent felony under 18 U.S.C. § 924(e)(2)(B), and noting that even if the armed weapon could be poison or lethal bacteria, such weapons likely could not be administered "without at least some level of physical force"); *United States v. Hill*, 832 F.3d 135, 143 (2d Cir. 2016) (holding that a Hobbs Act Robbery is a crime of violence under 18 U.S.C. § 924(c)(3) even though the robbery could theoretically be "accomplished by threatening to poison a victim, rather than to shoot him"); *United States v. Waters*, 823 F.3d 1062 (7th Cir. 2016) (holding that enhanced domestic battery constitutes a crime of violence under U.S.S.G. § 4B1.2(a)(1)); *United States v. Rice*, 813 F.3d 704 (8th Cir. 2016) (same); *United States v. Haldemann*, 664 F. App'x 820, 822 (11th Cir. 2016), *cert. denied*, No. 16-7895, 2017 WL 554709 (U.S. Mar. 20, 2017) (same). Based on the authorities set forth below, the Court finds that courts in the Third Circuit take the latter approach and do not restrict the reasoning in *Castleman* to the misdemeanor crime of domestic violence context.

The Court finds that these cases—all of which cite and employ the reasoning in *Castleman*—are in line with the reasoning of the courts in the Third Circuit. For example, the court in *United States v. Gorny*, 655 F. App'x 920, 924 (3d Cir. 2016) examined whether the defendant's prior Pennsylvania convictions for aggravated assault constituted a crime of violence under § 4B1.2 of the United States Sentencing Guidelines for purposes of determining the applicability of a sentencing enhancement. *Id.* at 924.[13] A person is guilty of aggravated assault under 18 Pa. C.S. § 2702(a)(4) "when he attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." *Id.* (quoting 18 Pa. C.S. § 2702(a)(4)) (quotations omitted). Applying the modified categorical approach, the court held that a violation of § 2702(a)(4) "is a crime of violence because it 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" *Id.* at 925 (quoting U.S.S.G. § 4B1.2(a)(1)). In so holding, the court reasoned as follows:

> A conviction under § 2702(a)(4) requires proof that the defendant caused or attempted to cause bodily injury. The Supreme Court has explained that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." *United States v. Castleman*, —— U.S. ——, 134 S. Ct. 1405, 1414, 188 L.Ed.2d 426 (2014). While *Castleman* reserved the question of whether "bodily injury" is necessarily caused by "violent force" as defined in *Johnson*, 559 U.S. at 140, 130 S. Ct. 1265, we need not answer this question, for we conclude that it would not be plain error to determine that the causation of bodily injury necessarily requires the use of force capable of causing bodily injury—that is, "violent force." *See United States v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016) (holding that a conviction for "caus[ing] physical injury" to another includes as an element the use of violent force capable of causing physical injury because "it is impossible to cause bodily injury without using force 'capable of' producing that result").

*Id.*; *see also United States v. Anderson*, 2016 WL 6595909, at *3 (D.N.J. Nov. 7, 2016) (citing *Castleman*, *Johnson I*, and *Gorny* in its holding that a New Jersey robbery statute that

---

[13] Similar to the definition of crime of violence at § 924(c)(3), U.S.S.G. § 4B1.2 defines crime of violence in relevant part as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Gorny*, 655 F. App'x at 925 (quoting U.S.S.G. § 4B1.2(a)(1)) (quotations omitted).

"encompasses conduct that '[t]hreatens another with or purposely puts him in fear of immediate bodily injury'" constitutes a crime of violence U.S.S.G. § 4B1.2(a)(1) and stating that "[e]ssentially, the relevant case law does not distinguish 'bodily injury' from 'physical force'"); *United States v. Harris*, 2016 WL 4539183, at *14 (M.D. Pa. Aug. 31, 2016) ("Based on *Castleman*, we can also conclude here that causing bodily injury or serious bodily injury also necessarily involves the use of physical force.").

In sum, the Court concludes that attempted first degree murder under 14 V.I.C. § 922(a)(1) is a crime of violence under § 924(c)(3) because it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A).[14] Specifically, because 14 V.I.C. § 922(a)(1) requires that Defendant "attempted to kill a human being" and that this attempted killing be done "willfully with deliberation and premeditation," 14 V.I.C. §§ 921, 922(a)(1), a violation of 14 V.I.C. § 922(a)(1) requires the attempted use of violent force. *See Castleman*, 134 S. Ct. at 1417 (Scalia, J., concurring) (opining that a crime that requires intentionally or knowingly causing bodily injury requires use of physical (violent force)). Under *Castleman*, the fact that the harm could occur indirectly (such as by poison), rather than directly (as with a kick or punch), does not matter. *See Castleman*, 134 S. Ct. at 1415; *Gorny*, 655 F. App'x at 925; *Redrick*, 841 F.3d at 484; *Hill*, 832 F.3d at 143; *Waters*, 823 F.3d 1062; *Rice*, 813 F.3d 704; *Haldemann*, 664 F. App'x at 822. Because the Court concludes that the attempted murder first degree offense with which Defendant is charged constitutes a crime of violence under § 924(c), the Court rejects Defendant's argument that Defendant could not have violated § 924(c).

---

[14] While Defendant argues that first degree murder under 14 V.I.C. § 922(a) is not a crime of violence, he does not argue that—if first degree murder actually is a crime of violence—the *attempt* to commit first degree murder under 14 V.I.C. § 922(a)(1) is not a crime of violence. Indeed, the "attempt" would necessarily be covered by the "threatened use of physical force." 18 U.S.C. § 924(c)(3).

### C. Presumption of Detention

Having rejected Defendant's threshold arguments, the Court now takes a *de novo* review of the evidence presented at the detention hearing and determines that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). As noted above, under 18 U.S.C. § 3142(e), there is a rebuttable presumption that no condition or combination of conditions exists that can reasonably assure the safety of others where there is "probable cause to believe that the person committed [*inter alia*] . . . an offense under [18 U.S.C. §] 924(c)." 18 U.S.C. § 3142(e)(3)(B). The Court finds that the Affidavit establishes probable cause for an offense under § 924(c) and, therefore, the rebuttable presumption under § 3142(e) applies.

Relevant here, Count 2 charges Defendant with violating § 924(c)(1)(A), which sets a minimum term of imprisonment for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." Counts 3 through 5 charge Defendant with attempted murder first degree—an offense that this Court has found constitutes a crime of violence. In the Virgin Islands, all murder that "is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other kind of willful, deliberate and premeditated killing" is murder in the first degree in violation of 14 V.I.C. § 922(a)(1). Thus, the inquiry is whether the Affidavit establishes probable cause that Defendant committed an offense under § 924(c) by using or carrying a firearm during and in relation to attempted murder in the first degree.

In the Third Circuit, "[p]robable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). Here, the Affidavit the establishes

probable cause that Defendant used or carried a firearm during and in relation to attempted murder in the first degree. Specifically, the Affidavit provides that shortly after the shooting incident occurred, one of the victims, Mr. Benjamin-Edwards, gave a video-recorded statement to law enforcement recounting the shooting incident. (Dkt. No. 1-1 at 2). In particular, Mr. Benjamin-Edwards informed law enforcement that while he and others were traveling in his vehicle, a white Acura sedan cut him off. (*Id.*). He saw an individual he recognized as "Stinky" lean out of the front passenger-side window of the white sedan and fire shots from a black handgun at Mr. Benjamin-Edwards' vehicle. (*Id.*). Moreover, when presented with a photo array, Mr. Benjamin-Edwards identified Defendant's picture as Stinky. (*Id.*). Mr. Benjamin-Edwards story is corroborated by Ms. Adams, another passenger in Mr. Benjamin-Edwards' vehicle, in that she informed police that she saw a white vehicle cut off Mr. Benjamin-Edwards' vehicle prior to the shots being fired. (*Id.*). Additionally, shortly after the incident, police observed what appeared to be several bullet holes and damaged windows in Mr. Benjamin-Edwards' vehicle. (*Id.* at 1).

These facts contained in the Affidavit constitute "reasonably trustworthy information or circumstances . . . [that] are sufficient to warrant a person of reasonable caution to conclude" that Defendant attempted to murder Mr. Benjamin-Edwards and the passengers in his car with deliberation and premeditation, and thus committed attempted first degree murder. *Myers*, 308 F.3d at 255. These facts similarly establish probable cause that Defendant used and discharged a firearm during and in relation to a crime of violence—particularly, attempted first degree murder. Thus, the Affidavit establishes probable cause that Defendant committed an offense under § 924(c) and, therefore, the rebuttable presumption under § 3142(e) applies.

Alternatively, the Court finds that—independent of the Affidavit—probable cause exits by virtue of the Information. It is well-established that an "indictment is sufficient to support a finding

of probable cause" necessary for the rebuttable presumption under § 3142(e) to arise. *Suppa*, 799 F.2d at 119. In the Virgin Islands, the same result obtains with the filing of an information because an information "is the *full equivalent* of the presentment of an indictment by a grand jury." *Flanders*, 2010 WL 4054442, at *6 (quoting *Rivera v. Government of Virgin Islands*, 375 F.2d 988, 990 (3d Cir. 1967)) (emphasis in original) (quotations omitted).[15]

Count 2 of the Information (Using a Firearm During a Violent Crime) charges that Defendant violated 18 U.S.C. § 924(c)(1)(A)(iii) when he carried and discharged a handgun during and in relation to attempted murder and reckless endangerment. (Dkt. No. 21 at 2). The filing of the Information in the current matter is sufficient to support the finding of probable cause as to Count 2, which is an offense that triggers the rebuttable presumption under § 3142(e)(3). *Flanders*, 2010 WL 4054442, at *7 (noting that an information in the Virgin Islands is equivalent to an indictment and holding that "in the Virgin Islands, an information similarly supports a finding of probable cause to trigger the rebuttable presumption [under § 3142(e)]").

In sum, under either the facts in the Affidavit or based on the filing of the Information, probable cause exists that Defendant committed an offense under § 924(c), which triggers the

---

[15] The fact that the Information was filed after the detention hearing occurred is of no import in the context of the Court's review because the Court's standard of review is *de novo*. *See Delker*, 757 F.2d at 1397 (rejecting defendant's argument that the district court erred by not explaining why the magistrate judge's decision was incorrect and stating that "[i]t is sufficient that the district court fully explained the result it reached and the reasons for it"); *United States v. Lopez*, 827 F. Supp. 1107, 1108 (D.N.J. 1993) (noting that district courts review detention orders *de novo* and "may do more than examine the transcript of the hearing before the magistrate"); *United States v. Atkins*, 2015 WL 4920831, at *3 (W.D. Pa. Aug. 18, 2015) ("The Court retains the discretion to make its determination [regarding a detention order] after reviewing the record developed before the U.S. Magistrate Judge or to accept additional evidence from the parties and rule on the expanded record."); *United States v. Burgess*, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009) (finding that an additional hearing was unnecessary after having "reviewed the transcript of the proceeding conducted by Magistrate Judge Lenihan, [and] consider[ing] the additional information and material set forth in Defendant's motion and the government's response").

rebuttable presumption under § 3142(e).

The Court now examines whether Defendant rebutted the presumption under § 3142(e) by "produc[ing] some credible evidence that he . . . [would] not present a threat to the community." *Oliver*, 2016 U.S. Dist. LEXIS 58745, at *16. As noted above, at the detention hearing Defendant presented the testimony of Ms. Florent. Ms. Florent's testimony supports the position that Defendant has family and community ties, voluntarily turned himself into the police, and would have two third-party custodians and a place to live if he was released. Defendant also proffered that Ms. Florent's son, Ceyon Florent, would offer testimony consistent with that of his mother. This evidence is insufficient, however, to rebut the presumption that there is no condition or combination of conditions that will reasonably assure the safety of the community.

In so holding, the Court finds that the current circumstances are analogous to those that the Third Circuit examined in *United States v. Perry*. In *Perry*, the Third Circuit reversed the district court's decision setting bail and remanded the case for the entry of a detention order. 788 F.2d at 118. Although the defendant in *Perry* "testified about his ties to the community, the fact that he was out on bail from state court charges and had not fled, his education, and his intention to remain in Allegheny County to face all charges," the Third Circuit concluded that the defendant presented no evidence regarding his dangerousness to the community. *Id.* at 107-08. After finding that the presumption of dangerousness under § 3142(e) applied, but that "there [was] no evidence in the record overcoming that presumption" the Third Circuit reversed the district court's order setting bail. *Id.* at 108, 118.

Similar to *Perry*, Defendant here put forth evidence regarding his ties to family and the community; the availability of two third-party custodians and a place to stay; and his voluntary surrender to the police; but he failed to put forth any evidence rebutting the statutory presumption

that he is a danger to the community. Because Defendant has failed to "come forward with some evidence of lack of dangerousness," he failed to rebut the presumption under § 3142(e). *Id.* at 115; *see also Oliver*, 2016 U.S. Dist. LEXIS 58745, at *29-30, *34 (holding that "[d]efendant has not met his burden to rebut the applicable presumption of detention" as to flight or danger to the community even though the defendant presented testimony that he complied with his state-imposed bail order and voluntarily surrendered to federal authorities); *cf. Carbone*, 793 F.2d at 561 (holding that the defendant successfully rebutted the presumption of dangerousness where the evidence showed that defendant was a first-time offender, had an offer of steady employment, a place to live, and that members of his community "posted one million dollars in [residential] property as surety").[16] In view of Defendant's failure to rebut the presumption, detention is appropriate under the circumstances.[17]

### D. 18 U.S.C. § 3142(g) Factors

Alternatively, even if there was no applicable presumption or the presumption could have been successfully rebutted, this would not alter the Court's conclusion because the Government has met its burden of proving Defendant's dangerousness by clear and convincing evidence. An analysis of the applicable factors set forth in 18 U.S.C. § 3142(g)—the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of Defendant, and the

---

[16] In *Carbone*, the Third Circuit noted the following: "Although posting a property bond normally goes to the question of defendant's appearance at trial, where the surety takes the form of residential property posted by community members the act of placing this surety is a strong indication that the private sureties are also vouching for defendant's character. Although character evidence is normally presented by oral testimony, proffered evidence of this activity—community members who know the defendant mortgage their homes to secure his release—is at least equivalent to oral character evidence." 793 F.2d at 561. There was no such evidence presented here.

[17] Given the Court's conclusion that Defendant failed to rebut the statutory presumption of dangerousness under § 3142(e), it is unnecessary to determine whether Defendant rebutted the statutory presumption regarding risk of flight. *See supra* footnote 4.

nature and seriousness of the danger to any person or the community—confirms the Court's conclusion in this regard.

### 1. Nature and Circumstances of the Offenses Charged

Defendant is charged with extremely serious crimes, including three counts of attempted premeditated murder of other human beings; using a firearm during a crime of violence; and unauthorized possession of a firearm. The seriousness of these charges is demonstrated in part by the substantial sentences they carry: attempted first degree murder carries a maximum sentence of 25 years, 14 V.I.C. § 331(1); using a firearm during a violent crime carries a mandatory *minimum* sentence of 10 years that must run consecutively to "any other term of imprisonment imposed," 18 U.S.C. § 924(c)(1)(A)(iii), (c)(1)(D)(ii); and unauthorized possession of a firearm carries a mandatory *minimum* sentence of 15 years, 14 V.I.C. § 2253(a).

In addition to the serious nature of the charges, the circumstances surrounding the alleged offenses are deeply troubling. Defendant allegedly was riding in a white sedan that blocked the path of Mr. Benjamin-Edwards' vehicle while Defendant leaned out of the passenger-side window and fired shots at Mr. Benjamin-Edwards' occupied car. (Dkt. No. 1-1 at 2). The alleged attack was unprovoked and seriously jeopardized the lives of five individuals, including two children. (*Id.*). Defendant's alleged conduct evinces a blatant disregard both for human life and the law and strongly suggests that Defendant is a danger to the community. *See, e.g.*, *Wrensford*, 2012 WL 6028628, at *4 (holding that the nature and circumstances of premeditated murder and several felony firearms charges that took place in populated area "raise substantial concerns about the safety of the community if the [d]efendants are not detained prior to trial"); *Flanders*, 2010 WL 4054442, at *8 (holding that crime charged—murder—is a crime of violence, and was carried out with a firearm, with brutality, in the vicinity of a school, which militates in favor of detention);

*United States v. Thomas*, 2009 WL 2996532, at *4 (D.V.I. Sept. 16, 2009) (stating that "users of firearms in commission of crimes of violence are dangerous in a very real sense" and holding that pretrial detention was warranted); *United States v. Carey*, 578 F. Supp. 2d 190, 192 (D. Me. 2008) (noting that the nature of firearm offenses weighs against release). Thus, the nature and circumstances of the offenses weigh strongly in favor of detaining Defendant prior to trial. Accordingly, the Court finds that this factor weighs heavily in favor of detention.

### 2. Weight of the Evidence

The Affidavit demonstrates that the Government appears to have a strong case against Defendant. To begin, all three adult occupants were interviewed by the police shortly after the incident and each individual recounted that they were inside Mr. Benjamin-Edwards' vehicle when shots began being fired. (Dkt. No. 1-1 at 2-3). Notably, one of the victims, Mr. Benjamin-Edwards, gave a video-recorded statement in which he reported that he was able to see the shooter and recognized him as "Stinky," an individual from whom Mr. Benjamin-Edwards had purchased marijuana in the past. (*Id.* at 2). Moreover, when presented with a photo array, Mr. Benjamin-Edwards identified Defendant's picture as Stinky. (*Id.*). Even though Ms. Adams did not have a clear view of the shooter, her report corroborates Mr. Benjamin-Edwards' in that she informed police that she saw a white vehicle cut off Mr. Benjamin-Edwards' vehicle prior to the shots being fired. (*Id.*). Additionally, shortly after the incident, police observed what appeared to be several bullet holes and damaged windows in Mr. Benjamin-Edwards' vehicle. (*Id.* at 1).

In sum, the Affidavit shows that, at this juncture, the evidence against Defendant is substantial and, accordingly, this factor also weighs in favor of detention. *See, e.g.*, *Flanders*, 2010 WL 4054442, at * 8 (opining that where weight of evidence against defendant appears substantial, that fact militates in favor of detention); *Kanawati*, 2008 WL 1969964, at *3 (same).

### 3. History and Characteristics of Defendant

At the detention hearing, Defendant presented evidence that he has ties to both his family and the community. His mother, Ms. Florent, testified that Defendant has lived on St. Croix essentially all of his life. (Dkt. No. 19-1 at 13-14). Along with Ms. Florent, present in the courtroom during the detention hearing were Ms. Florent's adult son, Ceyon Florent; Ms. Florent's sister, Eupemia; her niece, Heidi Meyers; and her friend, Thelma Jameson. Ms. Florent also stated that she also has one brother and two aunts. (*Id.* at 13, 17). Ms. Florent further testified that she, as well as Ceyon who lives with her, would be willing to serve as third-party custodians for Defendant and allow him to live with them. (*Id.* at 16). Defendant's uncontested ties to the community and to family are factors that weigh against detention. *See Wrensford* 2012 WL 6028628, at *4 (family and community ties contributed to the conclusion that the history and characteristics factor weighed against detention).

Additionally, Ms. Florent asserted that Defendant voluntarily surrendered to the authorities. Ms. Florent stated that when she learned that the police were looking for him, she told Defendant to turn himself into the police, and that Defendant did so. (Dkt. No. 19-1 at 15). As noted by the court in *Oliver*, "[c]ourts have found that facts underlying a defendant's voluntary surrender to authorities may support positive inferences in a defendant's favor that he is unlikely to flee and will appear when required . . . . However, it is not conclusive and voluntary surrender, by itself, cannot suggest that a presumptively dangerous person will not threaten public safety upon his or her temporary return to the street." *Oliver*, 2016 U.S. Dist. LEXIS 58745, at *30 (quoting *United States v. Fiandor*, 874 F. Supp. 1358, 1361 (S.D. Fl. Jan. 13, 1995)) (quotations and internal citations omitted). Here, the evidence of Defendant's voluntary surrender—together with his family and community ties—weighs against detention.

On the other hand, the Affidavit notes that Defendant has a criminal history. Specifically, on November 23, 2010, Defendant was convicted of Grand Larceny and was sentenced to two years and one month of supervised probation with conditions. (Dkt. No. 1-1 at 3). Moreover, in its Response, the Government presents evidence that Defendant had "an unsatisfactory discharge from probation" relating to his Grand Larceny conviction. (Dkt. No. 22 at 10). Specifically, the Government attaches to its Response an "Administrative Discharge from Probation" form from the Superior Court of the Virgin Islands, Office of Probation. The Administrative Discharge form, which was executed on August 31, 2016, states that even though Defendant's probationary period has expired, conditions remain outstanding. (Dkt. No. 22-1 at 1). Specifically, the Administrative Discharge form states that Defendant failed to obtain his G.E.D., must pay a probation fee balance of $165, and "failed to comply with the conditions of the Probation Office." (*Id.*).[18] The Court finds that Defendant's 2010 conviction for Grand Larceny and his failure to fully satisfy the conditions of his resulting probation together weigh in favor of detention. *See United States v. Thomas*, 2016 WL 890583, at *8-10 (W.D. Pa. Mar. 9, 2016) (noting that the defendant's "history of engaging in unlawful activity while on supervised release, including ignoring several of his conditions" contributed to finding that his "history and characteristics weigh[ed] in favor of detention"); *United States v. Stefano*, 1993 WL 261637, at *3 (E.D. Pa. June 30, 1993), *aff'd*, 37 F.3d 1491 (3d Cir. 1994) (noting that the defendant's lone prior conviction for hijacking contributed to a finding of dangerousness and, thus, the need for detention).

In sum, while Defendant has demonstrated family and community ties and voluntarily surrendered to authorities, he also has a prior criminal conviction and failed to fully comply with

---

[18] On this last item, the Administrative Discharge fails to specify which "conditions of the Probation Office" Defendant failed to satisfy. (Dkt. No. 22-1 at 1).

the conditions of his probation. In its totality, the Court finds that this factor weighs in favor of detention—especially, as here, where the Court's focus is on the issue of dangerousness. *See Thomas*, 2016 WL 890583, at *8-10 (finding that the history and characteristics factor weighed in favor of detention based on the defendant's significant criminal history, even though the defendant was "a lifelong resident of Western Pennsylvania," who had six children residing close by, and was living with a cousin); *see also United States v. Garcia*, 2007 WL 2825724, at *4 (E.D. Pa. Sept. 20, 2007) ("The United States Court of Appeals for the Third Circuit has found community ties to be 'of limited weight' in the context of a case where other factors weigh heavily in favor of pretrial detention." (quoting *Delker*, 757 F.2d at 1396)).

### 4. Nature and Seriousness of the Danger to Any Person or the Community

The Court finds that under the particular circumstances in this case—in which the victims, especially Mr. Benjamin-Edwards, may likely be key Government witnesses—the nature and seriousness of danger to the victims alone strongly favors detention. *See Wrensford* 2012 WL 6028628, at *5-6 (finding that the nature and seriousness of the danger to any person or the community factor weighed in favor of detention in part because a particular individual who was known by the defendants "may likely be a Government witness and could be at risk of harm should the [d]efendants be released prior to trial"). In addition, the Court finds that the manner in which Defendant allegedly shot at Mr. Benjamin-Edwards' vehicle—on a public road, without provocation, and without regard to the lives of the three adults and two children within the vehicle—demonstrates Defendant's dangerousness to the community generally. *See United States v. Allen*, 409 F. Supp. 2d 622, 632 (D. Md. 2006) (finding that the underlying facts of the defendant's arrest "lucidly portray the defendant's serious dangerousness" where the defendant

was pointing a gun at the head of a person kneeling on the ground). Accordingly, the Court finds that this factor weighs heavily in favor of detention.

### E.  18 U.S.C. § 3142(e) Analysis

Assessing the four factors under 18 U.S.C. § 3142(g), the Court finds that the Government has established, by clear and convincing evidence, that "no condition or combination of conditions will reasonably assure the . . . safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Notwithstanding Defendant's family and community ties and voluntary surrender, which are arguments in favor of Defendant's release, the Court finds that consideration of all of the relevant factors strongly favors detention. *Alexander*, 2007 WL 3391417, at *3 (ruling that strong family ties are not dispositive in firearms case, given other relevant factors); *see also Thomas*, 2016 WL 890583, at *8-10; *Garcia*, 2007 WL 2825724, at *4. Notably, the Court has found that all four factors—the nature and circumstances of the offense charged; the weight of the evidence; the history and characteristics of Defendant; and the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release—weigh in favor of detention. Accordingly, for this independent reason, grounded in an analysis of the 18 U.S.C. § 3142(e) factors, the Court agrees with the Magistrate Judge's conclusion that the Government has established by clear and convincing evidence that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." (Dkt. No. 10 at 2). Detention is therefore warranted.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds, based on its *de novo* review, that the Government has made the requisite showing to support the Magistrate Judge's conclusions in the Detention Order. Accordingly, the Court will deny Defendant's "Notice of Appeal of Detention Order" and his "Motion for Review and Revocation of Detention Order and Brief in Support."

(Dkt. Nos. 16, 17). Further, because the Court deems the current record sufficient to resolve this matter, the Court will deny Defendant's request for a hearing.

An appropriate Order accompanies this Memorandum Opinion.

Date: April 27, 2017

_____/s/_____
WILMA A. LEWIS
Chief Judge